**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
SARA KIM, et al.,

               Plaintiffs,

         -against-

STEPHEN CHOI, et al.,

               Defendants.
---------------------------------------------------------------x

19-CV-8911 (OTW)

**OPINION & ORDER**

**ONA T. WANG**, **United States Magistrate Judge:**

Plaintiffs Sara Kim and Angelo Duva brought this action against Stephen Choi, Christine Tripi, and St. Vince Group, LLC (the "Company") (collectively "Defendants") in accordance with the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs alleged failure to pay minimum wages and "wage supplements in the form of unreimbursed expenses." Compl. ¶¶ 50-58. Plaintiffs also filed suit "to enforce certain rights under the Company's operating agreement and under New York law, including rights of access to Company books and records." Compl. ¶ 1. Defendants then filed a motion to dismiss, arguing that Plaintiffs were "investors" in the Company, just like Defendants, and thus were not "employees" pursuant to the FLSA. (ECF 27). Before that motion was fully briefed or decided, Plaintiffs and Defendants reached a settlement and now seek Court approval of their proposed settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] All parties have

---
[1] After the case was filed, Defendant Tripi filed a petition for Chapter 7 bankruptcy and was subsequently discharged on November 18, 2020. (ECF 46 at 1, ECF 47 at 1). Plaintiffs state that no FLSA claims are asserted against Tripi and that, under the terms of the settlement, Plaintiffs' FLSA claims are "resolved in exchange for a confession of judgment executed by Defendant Choi on behalf of St. Vincent Group, LLC," whereas "[a]ll non-FLSA

1

consented to my jurisdiction to decide the motion in accordance with 28 U.S.C. § 636(c). (ECF 23). For the reasons below, the Court **DECLINES** to approve the settlement agreement as fair and reasonable under *Cheeks*.

I.     **Background**[2]

Plaintiffs state they agreed to go into business with Defendants and, in December 2017, the four entered into an LLC operating agreement. Compl. ¶ 14. Each plaintiff contributed $26,500 to purchase a 15% interest in the Company, while Choi owned 51% and Tripi owned 19%. Compl. ¶¶ 15-16. Defendants were identified as the managers of the Company. Compl. ¶ 17. Around March 30, 2018, Choi sold 15% of the Company to Miguel Vazquez, "whom he brought in as a 'general manager.'" Compl. ¶ 18. Plaintiffs allege that, because Choi no longer owned 51% of the Company, he stated that the owners would now need to vote on its actions. Compl. ¶ 20. They also allege that Choi reported different ownership percentages to the IRS in various filings. Compl. ¶ 21.

The operating agreement identified Plaintiffs' contributions as consisting of cash and not services and specified that "[m]embers could be employees of the Company, and . . . that any such employment would be at-will." Compl. ¶ 22. Plaintiffs agreed to work for the Company for pay and were employed in various roles, such as bartenders and shift managers. Compl. ¶¶ 23-24. After the restaurant opened on July 4, 2018, Plaintiffs were initially paid for their work. Compl. ¶ 26. On August 24, 2018, however, Choi informed Plaintiffs and several

---

claims, including those against Defendant Tripi, are dismissed without prejudice." (*Id*. at 2). Because stipulated dismissals of non-FLSA claims do not require *Cheeks* approval, the Court will not evaluate any agreement between Tripi and Plaintiffs. *See Chowdhury v. Brioni Am., Inc.*, No. 16-cv-344 (HBP), 2017 WL 5953171, at *5 (S.D.N.Y. Nov. 29, 2017).
[2] The following facts are as alleged in Plaintiff's complaint. (*See* ECF 1).

others that, going forward, owners would not be getting paid. Compl. ¶ 27. Around November 23, 2018, Choi informed all of the bartenders that, beginning the following Monday, they would take their tip money in cash nightly. Compl. ¶ 28. Plaintiffs continued to work at the restaurant until December 13, 2018. Compl. ¶ 29. Plaintiffs allege they were never paid a minimum wage during this time, and they estimate that Kim was not paid for at least 315 hours, while Duva was not paid for at least 500 hours of work. Compl. ¶ 30. Additionally, Plaintiffs were not paid spread of hours wages on days they worked more than 10 hours. Compl. ¶ 31.

Around December 10, 2018, Duva raised concerns about the Company's financials after identifying irregularities in the Company's point-of-sale system when compared to the lack of profit distributions from the business to its owners. Compl. ¶¶ 32-34. Three days later, Choi informed Vazquez, Kim, Duva, and Tripi that because he was a managing member and the others were not, he would no longer be holding meetings nor requiring assistance from any members in operating the business. Compl. ¶ 35. On December 31, 2018, Choi informed Plaintiffs that he and Tripi would be compensated $1,000 per week each for their services. Compl. ¶ 36. Vazquez, who was being paid less than $1,000 per week, was fired around the same time. Compl. ¶ 36. Shortly after this time, Defendants changed the POS passwords and the restaurant locks. Compl. ¶ 39.

Plaintiffs subsequently made multiple attempts to negotiate a buyout of their interests but were told that the Company was "underwater," though Defendants refused to provide records to demonstrate that was the case. Compl. ¶ 40. Plaintiffs assert that they have a right to access the Company's books and records according to the operating agreement. Compl. ¶ 49. Plaintiffs also allege that Defendants made multiple capital calls, in contravention of the

operating agreement, in attempts to pressure Plaintiffs to accept a nominal buyout of their interests. Compl. ¶¶ 37-38, 47-48.

## II. Discussion

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will approve such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

### a. Range of Recovery

Plaintiffs allege damages of at least $6,500 for Duva and $4,100 for Kim, and a total "estimated to be no less than $31,000" after accounting for liquidated and statutory damages. Compl. ¶¶ 56, 71. The proposed settlement amount is $11,000 for Plaintiffs' FLSA claims, with Plaintiffs' remaining non-FLSA claims deferred to state court. (ECF 46 at 3). It is not clear how much of the total settlement amount will be distributed to Plaintiffs and how much will be used to pay attorney's fees, though the proposed amount is more than the $10,600 actual damages

asserted by Plaintiffs and is approximately 35% of the stated damages inclusive of liquidated and statutory damages.[3] "Nowhere in the parties' submission is there an actual, bottom-line statement of the dollar amount that each of the named plaintiffs would receive from the proposed settlement." *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 177 (S.D.N.Y. 2015) (denying approval because, among other things, the court could not discern whether the proposed settlement agreement was fair and reasonable since it did not "specify the total amount that each of the three named plaintiffs would receive"). Accordingly, absent information regarding whether Plaintiffs' counsel intends on claiming a percentage of the settlement award for attorney's fees, the Court cannot fully evaluate this factor.

### b. Burden and Risks of Litigation

Settlement enables the parties to avoid the burden and expense of preparing for trial. The parties' filings demonstrate that there are significant disputes present in this case that present them with risks were they to proceed with litigation, as demonstrated by the motion to dismiss filed by Defendants arguing that Plaintiffs are not "covered employees" pursuant to the FLSA. (*See generally* ECF 1, ECF 19, ECF 20, ECF 26, ECF 27). Plaintiffs acknowledge that settlement "avoids the need for discovery on [the issue of FLSA coverage] and the need to resolve any technical legal questions about how the enterprise's annual revenue should be calculated." (ECF 46 at 4). Moreover, Plaintiffs state that "[a]lthough minimum-wage and

---

[3] When examining the proportion of recovery, courts often look at what Plaintiff would receive rather than the total settlement amount. *See, e.g., Rosario v. Structural Pres. Sys., LLC*, No. 18-CV-83 (HBP), 2019 WL 1383642, at *2 (S.D.N.Y. Mar. 27, 2019); *Rojas v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016); *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015). Because one of the primary purposes of a *Cheeks* approval is to protect the employee, I concur with this approach.

corporate issues will still need to be resolved in another forum, the Settlement Agreement resolves all federal minimum-wage claims and facilitates the transfer of state-law issues," and "avoids the potential risk that this Court will later determine that there is no FLSA coverage." (*Id*.)

### c. Arm's Length Negotiation

The parties represent that the settlement was a product of extensive negotiations, including the use of *pro bono* mediation counsel for Defendants and a court-appointed mediator, and there is no evidence to the contrary. (*Id*.)

### d. Risk of Fraud or Collusion

There is nothing in the record to suggest that fraud or collusion played a role in the settlement.

### e. Additional Factors

The release is appropriately limited to FLSA claims based on Plaintiffs' employment up to the date the agreement was executed and does not seek to exceed the scope of those issues. *See Caprile v. Harabel Inc.*, 14-CV-6386, 2015 WL 5581568, at *2 (S.D.N.Y. Sept. 16, 2015) (finding limitation to employment-related claims sufficiently narrow).

This agreement also lacks certain objectionable provisions that courts have found fatal in other proposed FLSA settlements. The proposed settlement agreement contains no confidentiality provision and has already been filed in the public record. *See Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15-CV-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) (finding "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements). Nor does the agreement contain a non-disparagement provision. *See Martinez v.*

6

*Gulluoglu LLC*, 15-CV-2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (finding non-disparagement provisions generally contravene the FLSA's purpose).

Plaintiffs state that there is no fees application in connection with this agreement. (ECF 46 at 4). Plaintiffs only state that "each side shall bear its own costs and attorneys' fees in this action." (*Id*.) Plaintiffs do not state whether any part of the settlement amount will be put towards attorney's fees, and thus the Court cannot evaluate this factor.

### III.  Conclusion

For the foregoing reasons, the Court declines to approve the parties' proposed settlement agreement as fair and reasonable. It is hereby **ORDERED** that, by February 19, 2021, Plaintiffs may renew their application for approval, but must include information regarding attorney's fees and whether Plaintiffs' counsel intends on claiming a percentage of the settlement award.

**SO ORDERED.**

Dated: February 9, 2021
    New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge